# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 13, 2004

## STATE OF TENNESSEE v. LARRY HUNT

**Direct Appeal from the Criminal Court for Shelby County**
**No. 00-12639-41      Chris Craft, Judge**

---

**No. W2003-01738-CCA-R3-CD  - Filed September 14, 2004**

---

The appellant, Larry Hunt, was convicted by a jury in the Shelby County Criminal Court of one count of aggravated rape, one count of aggravated robbery, and one count of aggravated kidnapping. Following a hearing, the trial court sentenced the appellant to twenty-five years incarceration for the aggravated rape conviction, twelve years incarceration for the aggravated robbery conviction, and twelve years incarceration for the aggravated kidnapping conviction. The trial court ordered the sentence for aggravated rape be served consecutively to the remaining sentences, for an effective thirty-seven year sentence. On appeal, the appellant challenges the sufficiency of the evidence to support his conviction of aggravated rape and the imposition of consecutive sentencing. In light of the United States Supreme Court's decision in Blakely v. Washington, __ U.S. __, 124 S. Ct. 2531 (2004), we modify the appellant's sentence for aggravated rape to twenty-two years and the sentences for aggravated robbery and aggravated kidnapping to ten years, for an effective sentence of thirty-two years incarceration. We also vacate the judgment of conviction for count two of indictment number 00-12640, which judgment was entered in error. We otherwise affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Vacated in Part and Affirmed as Modified.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

W. Mark Ward (on appeal) and Trent Hall (at trial), Assistant Public Defenders, Memphis, Tennessee, for the appellant, Larry Hunt.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stephen Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I.  Factual Background

In the early morning hours of May 15, 2000, the victim was working alone as a night auditor at a Holiday Inn in Memphis.  The hotel was equipped with a "fake" security camera.  At approximately 1:00 a.m., the victim "put the computer system into the audit program" and went to the restroom.  When the victim came out of the restroom, she was startled by the appellant standing at the door to the office.  The victim recognized the appellant, a former employee who had trained her as night auditor approximately one month prior to these offenses.  The victim "jumped back, closed [her] eyes," and told the appellant he had frightened her.  However, when she opened her eyes, the appellant had a gun pointed in her face.  The victim described the gun as "a silver gun with an off-white handle."

The appellant told the victim to open the door to the office, and the victim complied.  Upon entering the office, the appellant ordered the victim to retrieve the cash drawer from the front desk.  The drawer contained approximately two to three hundred dollars.  Again, the victim complied.  The appellant took the money from the drawer and placed it in his pocket.  Thereafter, the appellant asked the victim for the keys to the night deposit box.  The victim replied that she did not have the keys.  The appellant then asked the victim for her purse and identification.  The appellant explained that he wanted her address in the event that she reported him to police.  The victim told the appellant that she did not have her purse or her identification.

Next, the appellant forced the victim to a back office and ordered her to sit on the floor.  In the office was a piece of luggage that had been left by a hotel guest. The appellant "ransack[ed]" the luggage, but did not take anything.  The appellant then ordered the victim to stand and walk with him to the rear of the hotel.  The victim testified that "[the appellant] had me in front of him, and he had the gun stuck in my back."  The appellant forced the victim to a dark banquet room.  Once inside the banquet room, the appellant "put his hand with the gun around [the victim's] neck."  The appellant then fondled the victim's breasts, put his hand into her panties, and digitally penetrated the victim.

Afterward, the appellant ordered the victim into a storage room and forced her to sit on the floor.  The appellant paced back and forth, then asked the victim for the keys to the hotel van.  The victim told the appellant that the keys were at the front desk.  The appellant and the victim returned to the front desk.  As they approached the front desk, they observed a man talking on the pay telephone in the lobby of the hotel.  Believing that the man was the owner of the hotel, the appellant ordered the victim to sit on the floor while he walked into the lobby.  The appellant returned shortly thereafter and told the victim that a guest was at the front desk waiting to be registered.

While the victim registered the guest, the appellant hid behind the front desk with the gun pointed at the victim. Because the computer system was "down [for] the night audit," the victim had to manually register the guest.  She asked the guest to fill out a registration form and handed the guest a card key on which she had written, "[C]all the police."  The guest asked the victim if she was

having a rough night, and the victim replied that "he didn't know the half of it." The guest never called the police.

After the guest retired to his room, the appellant told the victim they "were fixing to go." However, the victim told the appellant that she "wasn't going anywhere with him" and that "if he was going to shoot [her], he was going to shoot [her] in the hotel where somebody could identify [her]." The appellant pushed the victim and ordered her out of the hotel. The victim turned and struck the appellant. The appellant then struck the victim on the head several times, "knock[ing] [her] in a daze." After repeatedly striking the victim, the appellant grabbed the victim by the back of her shirt and dragged her from the hotel.

Outside, the appellant forced the victim into the hotel van, ordering her to sit on the floor behind the driver's seat. The appellant then climbed into the driver's seat and drove away from the hotel. The appellant drove for approximately half an hour, stopping occasionally on side streets. From her position, the victim was able to see out the window of the van, but was unable to signal for help.

Eventually, the appellant drove to Sheffield High School and parked in a dark area behind the school. The appellant forced the victim out of the van and to her knees. He informed the victim that he had to kill her to prevent her from identifying him. The appellant then pointed the weapon at the victim's head, and the victim began to pray aloud. The appellant cocked the gun and told the victim to "shut up." The appellant put the gun to the victim's head, but did not pull the trigger. Instead, the appellant ordered the victim back into the van. The victim complied, and the appellant allowed her to sit in the seat behind the driver's seat. Before driving away from the high school, "[the appellant] turned around and looked [the victim] in [the] face and told [her] that [she] was lucky [she] was a black woman with kids."

After leaving the high school parking lot, the appellant told the victim that when questioned about the events of that evening, she was to say that a man in a ski mask committed the offenses. The victim agreed. The appellant then apologized for hurting her and asked if she wanted him to drive her home. When the victim declined, the appellant pulled into a parking lot and told the victim that "his life was now in [her] hands." He removed his t-shirt and sweater, "wiped down everything in the van," and walked away.

The victim returned to the hotel and telephoned the police and the manager of the hotel. Shortly thereafter, the police arrived. An ambulance also arrived and examined the victim's head and wrists. The victim's injuries did not require hospitalization.

Robbery Sergeant Bart Ragland and Officer Mike Shearin of the Memphis Police Department were involved in the investigation of the offenses and the arrest of the appellant. The victim identified the appellant as the perpetrator, and a warrant for the appellant's arrest was issued. Thereafter, Sergeant Ragland asked Officer Shearin to assist in locating the appellant. Officer Shearin questioned the appellant's parents at their respective residences and provided them with his

cellular telephone number. On May 19, 2000, the appellant telephoned Officer Shearin and left a message on the voice mail system. Later that day, Officer Shearin arranged a meeting at the residence of the appellant's father, Mr. Larry Hunt, Sr.

Officer Shearin and his partner went to Mr. Hunt's house to meet the appellant. At approximately 6:00 p.m., the officers were sitting on the front porch with Mr. Hunt when the appellant arrived in a vehicle driven by one of his acquaintances. As Officer Shearin and his partner placed handcuffs on the appellant's wrists, "[the appellant] immediately . . . began to tell [them] about the night at the Holiday Inn." The appellant denied raping the victim, claiming that he only went to the hotel to take the money. The appellant told Officer Shearin that he instinctively pointed the gun at the victim after she startled him.

Shortly thereafter, Officer Shearin contacted Sergeant Ragland and told him that the appellant had been arrested. Approximately thirty minutes later, Sergeant Ragland arrived. The appellant agreed to provide Sergeant Ragland with a statement, saying he "wanted to get this off his chest." Sergeant Ragland recorded the appellant's statement on audiotape. The appellant informed the officers that a gun had been involved and offered to show the officers where he had disposed of the weapon, stating that it was "right around the corner." Officer Shearin, his partner, Sergeant Ragland, and two uniformed officers drove the appellant to the alleged location. While the appellant remained in the backseat of a patrol car, the officers searched the area. However, they were unable to locate the weapon.

On October 31, 2000, the Shelby County Grand Jury returned indictments charging the appellant with two counts of aggravated robbery, two counts of aggravated rape, and one count of especially aggravated kidnapping. At the jury trial in November 2002, the State "withdr[e]w" the second count of aggravated rape and proceeded to trial on two counts of aggravated robbery, one count of aggravated rape, and one count of especially aggravated kidnapping. Based upon the evidence presented at trial, the jury convicted the appellant of one count of aggravated robbery, one count of robbery, and one count of aggravated kidnapping. However, the jury was unable to reach a verdict as to the charge of aggravated rape, and the trial court declared a mistrial as to the rape charge.

Following a retrial on the aggravated rape charge, the jury convicted the appellant. At sentencing, the trial court merged the robbery conviction into the aggravated robbery conviction. Thereafter, the trial court sentenced the appellant to twenty-five years incarceration for the aggravated rape conviction, twelve years incarceration for the aggravated robbery conviction, and twelve years incarceration for the aggravated kidnapping conviction. The trial court ordered the sentence for aggravated rape be served consecutively to the remaining sentences, for an effective thirty-seven year sentence. The appellant now appeals, challenging the sufficiency of the evidence to support his conviction of aggravated rape and the imposition of consecutive sentencing.

## II.  Analysis

### A.  Sufficiency of the Evidence

When an appellant challenges the sufficiency of the convicting evidence, the standard for review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).  Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient.  State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the jury as trier of fact.  State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).  Should the reviewing court find particular conflicts in the trial testimony, the court must resolve the conflicts in favor of the jury verdict.  Tuggle, 639 S.W.2d at 914.  This court will not reweigh or reevaluate the evidence.  Bland, 958 S.W.2d at 659.

Aggravated rape is defined in pertinent part as the unlawful sexual penetration of a victim by the defendant or the defendant by the victim when force or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon.  Tenn. Code Ann. § 39-13-502(a)(1) (2003).  Sexual penetration includes "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required."  Tenn. Code Ann. § 39-13-501(7) (2003).

On appeal, the appellant asserts that "the only proof that a sexual offense was committed [was] the uncorroborated testimony of the victim."  However, the testimony of a victim alone is sufficient to support a guilty verdict.  State v. Ronald Haynes, No. M2000-00204-CCA-R3-CD, 2001 WL 589174, at *5 (Tenn. Crim. App. at Nashville, June 1, 2001) (citing State v. Williams, 623 S.W.2d 118 (Tenn. Crim. App. 1981)).  In the instant case, the victim testified that the appellant forced her at gunpoint into a dark banquet hall.  In the banquet hall, the appellant approached the victim from behind and placed his hand holding the gun around her neck.  The appellant then fondled the victim's breasts and digitally penetrated the victim's vagina.  Based upon this testimony, a rational jury could have concluded that the appellant was guilty of aggravated rape.  This issue is without merit.

B.  Sentencing

Next, the appellant challenges the imposition of consecutive sentencing.  When an appellant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct.  Tenn. Code Ann. § 40-35-401(d) (2003).  However, this presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  If the record demonstrates that the trial court failed to consider the sentencing principles and the relevant facts and circumstances, review of the sentence will be purely de novo.  Id.

In conducting our review, this court must consider (1) the evidence, if any, received at trial and at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to the sentencing alternatives; (4) the nature and characteristics of the offenses; (5) any mitigating or enhancement factors; (6) any statements made by the appellant on his own behalf; and (7) the appellant's potential for rehabilitation or treatment.  Tenn. Code Ann. § 40-35-102, -103, -210 (2003); see also Ashby, 823 S.W.2d at 168.  The burden is on the appellant to show that the sentence is improper.  Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

The appellant was sentenced as a Range I standard offender, for which the applicable range for Class A felonies is fifteen to twenty-five years and for Class B felonies is eight to twelve years.  Tenn. Code Ann. § 40-35-112(a)(1) and (2) (2003).  The presumptive sentence for a Class A felony is the midpoint within the applicable range if there are no enhancement or mitigating factors.  Tenn. Code Ann. § 40-35-210(c).  The presumptive sentence for a Class B felony is the minimum within the applicable range if there are no enhancement or mitigating factors.  Id.  If the trial court finds that such factors do exist, the court must start at the presumptive sentence, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors.  Tenn. Code Ann. § 40-35-210(e).  There is no mathematical formula for valuating factors to calculate the appropriate sentence.  State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996).  "Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the trial court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record."  Id. at 475-76.

In sentencing the appellant, the trial court applied the following enhancement factors:

> (2) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
> (6) The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;

(9) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; and
(21) The defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult.

Tenn. Code Ann. § 40-35-114 (2003). The trial court afforded great weight to enhancement factors (2) and (21). The trial court considered as a mitigating factor that the appellant voluntarily released the victim; however, the trial court found this factor to be outweighed by the applicable enhancement factors. Accordingly, the trial court sentenced the appellant to twenty-five years incarceration for the aggravated rape conviction, twelve years incarceration for the aggravated robbery conviction, and twelve years incarceration for the aggravated kidnapping conviction.

Prior to our review on appeal, the appellant filed a motion requesting this court to consider the impact on his sentence of the United States Supreme Court's decision in Blakely v. Washington, __ U.S. __, 124 S. Ct. 2531 (2004), which was released after the submission of briefs in the instant case. This court has recognized that Blakely "calls into question the continuing validity of our current sentencing scheme." State v. Julius E. Smith, No. E2003-01059-CCA-R3-CD, 2004 WL 1606998, at *4 (Tenn. Crim. App. at Knoxville, July 19, 2004); see also State v. Michael Wayne Poe, No. E2003-00417-CCA-R3-CD, 2004 WL 1607002, at *9 (Tenn. Crim. App. at Knoxville, July 19, 2004). In Blakely, __ U.S. at __, 124 S. Ct. at 2537 (citations omitted), the Supreme Court held that

> the "statutory maximum" for Apprendi [v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000)] purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

In a supplemental brief, the State concedes that the trial court's application of enhancement factor (21) was inappropriate in the instant case. Moreover, in light of Blakely, the applicability of enhancement factors (6) and (9) is questionable. However, the application of enhancement factor (2), which was based upon the appellant's prior convictions of robbery and sexual battery, does not violate the dictates of Blakely. Accordingly, we modify the appellant's sentence for aggravated rape to twenty-two years and the sentences for aggravated robbery and aggravated kidnapping to ten years.

Next, the appellant asserts that the trial court erred by ordering the appellant to serve his sentence for aggravated rape consecutively to his other sentences. Under Tennessee Code Annotated section 40-35-115 (2003), a trial court may impose consecutive sentences if the defendant is convicted of more than one offense and the trial court finds by a preponderance of the evidence that:

> (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
> (2) The defendant is an offender whose record of criminal activity is extensive;
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist . . . ;
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor . . . ;
> (6) The defendant is sentenced for an offense committed while on probation; or
> (7) The defendant is sentenced for criminal contempt.

In imposing consecutive sentencing, the trial court found the appellant to be a dangerous offender. However, in State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), our supreme court held that satisfying Tennessee Code Annotated section 40-35-115(b)(4), by itself, was not sufficient to sustain consecutive sentences. If the defendant is found to be a dangerous offender under the statute, the trial court must also determine whether the sentences imposed are reasonably related to the severity of the offenses and necessary to protect the public from further criminal activity by the defendant, the "Wilkerson factors." Id. Moreover, trial courts must make specific findings regarding these factors before imposing consecutive sentences. State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999).

In the instant case, the trial court determined that consecutive sentencing was reasonably related to the severity of the offenses, finding that "[t]he circumstances surrounding the commission of these offenses were aggravated because of the almost torture of the victim." The trial court also found that consecutive sentencing was necessary to protect the public from further criminal activity by the appellant. Specifically, the trial court noted the appellant's history of committing sexual offenses and found,

> This man is an extremely dangerous man. . . . I feel that as soon as [the appellant] is released from prison, within the next year or two he will assault another young lady and this time he will kill her so that she won't testify against him. This is the kind of nightmare young man that we read about on the news when someone is murdered and

-8-

they talk about some lenient court years before that gave him a short
sentence.

We conclude, as did the trial court, that the appellant qualified as a dangerous offender. Accordingly, we affirm the imposition of consecutive sentencing.

### C.  Judgment of Conviction as to Second Count of Aggravated Rape

Although not raised by either party, we note that a judgment of conviction was entered in error on count two of indictment number 00-12640, which count charged the appellant with aggravated rape causing bodily injury.  See Tenn. Code Ann. § 39-13-502(a)(2).  This count was withdrawn by the State at the appellant's trial on November 21, 2002.  Accordingly, we vacate the judgment of conviction entered by the trial court on this count.

### III.  Conclusion

In light of the United States Supreme Court's decision in Blakely, we modify the appellant's sentence for aggravated rape to twenty-two years and the sentences for aggravated robbery and aggravated kidnapping to ten years, for an effective sentence of thirty-two years incarceration. Additionally, we vacate the judgment of conviction entered in error for count two of indictment number 00-12640.  We otherwise affirm the judgments of the trial court.

 

 

 

_____
NORMA McGEE OGLE, JUDGE